UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTEGRATED CREDIT SOLUTIONS, INC.; and ) <br> FLAGSHIP CAPITAL SERVICES CORP. ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 02-12431 (JLT) |

## FINAL CONSENT JUDGMENT

It appearing to the Court that the plaintiff, the Commonwealth of Massachusetts (hereinafter the "Commonwealth"), and the defendants, Integrated Credit Solutions, Inc. and Flagship Capital Services Corporation (collectively referred to as "ICS"), have consented to the entry of this Final Consent Judgment ("Consent Judgment") as full and final resolution of all claims asserted in this action, and the Court finding both subject matter and personal jurisdiction, IT IS HEREBY AGREED, ORDERED AND ADJUDGED THAT:

I. PAYMENTS TO THE COMMONWEALTH PURSUANT TO G.L. c. 93A, § 4

1. ICS shall pay, by April 23, 2004, $450,000 to the Commonwealth of Massachusetts pursuant to G.L. c. 93A, § 4, such sum consisting of:

a) $400,000 in restitution pursuant to G.L. c. 93A, § 4, which the Attorney General shall return to Massachusetts consumers in conformance with paragraph 3, below, after which any balance shall be paid by the Attorney General to the Local Consumer Aid Fund established pursuant to G.L. c. 12, § 11G; and

b) $50,000 in a civil penalty pursuant to G.L. c. 93A, § 4.

It is understood and agreed that this payment relates solely to the Commonwealth's claims made under G.L. c. 93A, § 4, is in settlement of a disputed claim, and is not to be construed as an admission of fault or liability on the part of ICS.

2. Payment to the Commonwealth shall be by certified check, bank check or wire transfer payable to the Commonwealth of Massachusetts, and, if by check, shall be delivered to Christopher K. Barry-Smith, Assistant Attorney General, One Ashburton Place, 19th Floor, Boston Massachusetts 02108.

## II. RESTITUTION TO MASSACHUSETTS CONSUMERS

3. (a) From the $400,000 paid by ICS pursuant to paragraph 1(a), the Attorney General shall, in conformance with this paragraph, return to "Prior Massachusetts Consumers" an amount equal to each consumer's "Net Initial Enrollment Fee" paid to ICS, as those terms are defined herein. "Prior Massachusetts Consumers" shall mean those Massachusetts residents who, at any time prior to filing of this Consent Judgment, paid ICS money in connection with enrollment in credit counseling or debt management services marketed by ICS and provided by a nonprofit client of ICS, and who, prior to the date of filing of this Consent Judgment, ceased to participate in such credit counseling or debt management plan. The "Net Initial Enrollment Fee" shall be equal to the amount of money (i) paid by the Prior Massachusetts Consumer to ICS in order to enroll in or receive credit counseling or debt management services marketed by ICS and provided by a nonprofit client of ICS (whether paid for enrollment services, goods related to credit counseling or other services), minus (ii) any portion of that initial payment refunded to the consumer by ICS prior to filing of this Consent Judgment.

(b) "Massachusetts Current Consumers" are those Massachusetts residents who enrolled in credit counseling or debt management programs marketed by ICS and provided by nonprofit clients of ICS and who remain enrolled in such credit counseling or debt management programs as of the date of filing of this Consent Judgment. Pursuant to this Consent Judgment, ICS shall return to all Massachusetts Current Consumers the Net Initial Enrollment Fee, within ten (10) business days of the earlier to occur of such client's (i) completion of his or her participation in such credit counseling or debt management program, including by pre-payment; or (ii) termination of participation in his or her credit counseling or debt management program. ICS shall return the Net Initial Enrollment Fee to Massachusetts Current Customers without regard for any contractual terms or conditions that may apply, including, without limitation, the terms and conditions set forth in ICS's "certificate" or any credit counseling or debt management plan enrollment agreement between a Massachusetts Current Customer and ICS or a nonprofit client of ICS.

(c) In order to effect restitution of Net Initial Enrollment Fees to Massachusetts Consumers, ICS has provided the Commonwealth, concurrently with providing ICS's executed Consent form, in electronic form and hard copy, a list of all Prior Massachusetts Consumers and a separate list of all Current Massachusetts Consumers (hereafter "Consumer Schedules"). On or before filing of this Consent Judgment, ICS shall certify, under pains and penalty of perjury, that ICS has provided the Commonwealth with Consumer Schedules based on the current and best information then available to ICS, and after seeking relevant information, if any, from current or former nonprofit clients of ICS that provided credit counseling or debt management services marketed by ICS. In the event that ICS, after reasonable inquiry, cannot determine whether a Massachusetts Consumer is still enrolled in credit counseling or debt management services

3

marketed by ICS and provided by a nonprofit client of ICS, ICS shall list that consumer in the Prior Massachusetts Consumer Schedule and indicate that the consumer's status is "currently unknown," and shall update that information if ICS learns the consumer's status. The Consumer Schedules shall identify, with respect to Prior and Current Massachusetts Consumers, at least the following information, as available to ICS: i) name; ii) last known address; iii) last known phone number(s); (iv) electronic mail address, if known; (v) initial fee paid by the Consumer to ICS; (vi) any refund of initial fee already paid by ICS; and (vii) Net Initial Enrollment Fee.

(d) Based on the Consumer Schedules provided by ICS, the Office of the Attorney General shall, in the exercise of its discretion, seek to pay to Prior Massachusetts Consumers the Net Initial Enrollment Fee reported in the Consumer Schedules. After the Attorney General has used reasonable efforts to locate and pay restitution to Massachusetts consumers hereunder, the Attorney General, in his sole discretion, may direct any money not paid to Massachusetts consumers to the Local Consumer Aid Fund administered by the Office of the Attorney General pursuant to G.L. c. 12, § 11G.

III. INJUNCTIVE RELIEF

4. ICS and all their agents, employees, successors, affiliates or assigns are permanently enjoined from engaging in any of the following acts and practices:

a) Soliciting, charging or accepting any money directly from Massachusetts consumers payable to ICS with respect to ICS's marketing or promotion to Massachusetts consumers of credit counseling or debt management services offered by non-profit clients of ICS, whether characterized as an enrollment fee or as payment for goods or services made available by ICS. This prohibition shall not prevent ICS from being paid for services by non-

4

profit entities on whose behalf ICS markets or promotes credit counseling, debt management plans or related services.

b) Communicating, directly or through an agent, artificial or pre-recorded voice recordings to Massachusetts residential phone numbers where the purpose of such phone messages is to: i) solicit money payable directly to ICS, Flagship or any other for-profit entity; or ii) solicit clients or business for, or seek to identify referrals to, any mortgage lender, mortgage broker, or any other for-profit entity. This prohibition shall not prevent ICS from communicating, directly or through an agent, artificial or pre-recorded voice recordings to Massachusetts residential phone numbers for non-profit entities on whose behalf ICS markets or promotes credit counseling, debt management plans or related services, provided ICS does not solicit money payable directly to ICS, Flagship or any other for-profit entity. Except as set forth above, this prohibition shall not affect the application of any applicable statutory or regulatory exemptions from the telemarketing restrictions of 47 U.S.C. § 227 and regulations thereunder (47 C.F.R. 64.1200), including exemptions for communications i) not for a commercial purpose; ii) for a commercial purpose but not including any unsolicited advertisement; or iii) per an established business relationship with the recipient. ICS does not waive any defenses it may have in any action under 47 U.S.C. § 227.

c) Making outbound telemarketing calls to Massachusetts consumers, relating to credit counseling or debt management services, including in the form of pre-recorded messages, without disclosing promptly and in a clear and conspicuous manner: i) the identity of the provider of the credit counseling or debt management services being offered and ii) the fact that ICS is marketing credit counseling or debt management services.

5

d) Misrepresenting to Massachusetts consumers material information, terms or conditions concerning any credit counseling or debt management services marketed by ICS, including, without limitation, representing:

    i) that a person has received an approval letter or other written communication from ICS, unless ICS has reason to believe that such a communication was, in fact, sent to such person;

    ii) that a person has been "approved" for credit counseling unless that person has actually been approved by the entity providing credit counseling;

    iii) that ICS offers a credit card or an extension of credit, if such is not the case;

    iv) that a certain interest rate (*e.g.*, "as low as" 1.5% or 1.9%) will or may apply to a consumer's debt to be repaid through credit counseling, unless: A) ICS can substantiate, at the time of the representation, that the claimed interest rate (or a lower rate) will specifically apply to the debt of that prospective credit counseling client; and B) the claimed rate is actually applied to that client's debt upon enrollment in credit counseling or debt management.

    v) that fees payable to non-profit credit counselors are tax-deductible;

    vi) that any initial fee or enrollment fee charged for credit counseling is "free" or fully refundable, without simultaneously disclosing all material terms and conditions required to obtain reimbursement of such fees;

(d) Failing to disclose, clearly and conspicuously, in ICS's live telephonic communications with Massachusetts consumers relating to potential enrollment in credit counseling or debt management programs offered by non-profit entities, prior to enrollment of such consumer or acceptance of any money for credit counseling (on behalf of a nonprofit credit counselor), the following information:

    (i) the amount of any fees or charges payable by the Massachusetts consumer to participate in the proposed credit counseling or debt management program, which shall include disclosure of the amount of any monthly or periodic fees as well as

6

disclosure of the total fees if the proposed program is completed (i.e., multiplying the monthly fee by the number of months in the proposed program);

(ii) whether such fees and charges have been accounted for in any estimate of savings or other benefits to the consumer from participation in such program;

(iii) If any comparison is made by ICS between the credit counseling or debt management program and paying debt without participation in a credit counseling or debt management program, ICS shall disclose all material assumptions employed with respect to paying debts without credit counseling, including (if applicable) any assumption about the level of monthly payments;

(iv) All material terms, conditions and limitations of the credit counseling or debt management program being offered, including (A) that credit cards must be cancelled in order to participate (if such is the case) and (B) any time delay before interest rates may be reduced or penalties or charges may be eliminated through the credit counseling or debt management program.

f) finding, offering to find, assisting in placement, or offering to assist in placement of residential mortgage loans, without being licensed by the Massachusetts Division of Banks.

g) creating any plan, as defined by Massachusetts G.L. c. 180, § 4A, clause (b).

IV. OTHER PROVISIONS

5. The parties to this Consent Judgment waive all rights of appeal in this action.

6. This Consent Judgment resolves any and all of the Commonwealth's claims against ICS based upon the allegations set forth in the Complaint. By entering this Consent

Judgment, ICS does not admit the allegations of the Complaint and does not admit fault or liability for the claims asserted in the Complaint.

7. Nothing in this Consent Judgment shall relieve ICS of its obligation to comply with applicable state and federal laws and regulations.

8. This Consent Judgment contains the complete agreement between the parties. No promises, representations or warranties other than those set forth in this agreement have been made by either party. This Consent Judgment supersedes all prior communications, discussions, or understandings, if any, of the parties, whether written or oral.

9. This Consent Judgment is between the Commonwealth and ICS. Except as expressly provided herein, nothing in this Consent Judgment is intended to: a) confer upon any other persons or entities any rights or remedies of any nature whatsoever by reason of this Consent Judgment; nor b) affect any rights or remedies of any other persons or entities with respect to ICS.

10. This Court shall retain jurisdiction of this case for purposes of enforcing this Consent Judgment, which is being entered pursuant to G.L. c. 93A, § 4. Violation of this Consent Judgment by the defendants is subject to civil penalties pursuant to G.L. c. 93A, § 4 and/or civil or criminal contempt sanctions, or as otherwise provided by law.

APPROVED AND SO ORDERED:

Hon. Joseph L. Tauro
United States District Judge

4/27/04

Respectfully submitted,

| COMMONWEALTH OF MASSACHUSETTS | INTEGRATED CREDIT SOLUTIONS and FLAGSHIP CAPITAL CORPORATION |
|---|---|
| THOMAS F. REILLY<br>ATTORNEY GENERAL | |
| By: *[signature]*<br>Christopher Barry-Smith, BBO # 565698<br>Assistant Attorney General<br>Consumer Protection and Antitrust Division<br>Public Protection Bureau<br>One Ashburton Place<br>Boston, MA 02108<br>(617) 727-2200, ext. 2539 | By: *[signature]*<br>John H. Brazilian, BBO # 054980<br>BUTTERS BRAZILIAN LLP<br>One Exeter Plaza<br>Boston, MA 02116<br>Telephone: (617) 367-2600<br>Facsimile: (617) 367-1363 |

## CONSENT

Integrated Credit Solutions, Inc. and Flagship Capital Services Corporation (hereinafter collectively referred to as "ICS"), through their undersigned officers, hereby:

1) admit to the continuing jurisdiction of the United States District Court for the District of Massachusetts over the persons and subject matter of this action,

2) consent to the entry of a Final Judgment regarding the claims at issue between the Commonwealth and ICS, in the form set forth above,

3) certify that they have read and understood the judgment and have consulted with counsel, and knowingly and voluntarily enter into this consent judgment,

4) understand that any violation of this judgment may result in being punished pursuant to G.L. c. 93A sec. 4 and/or by being adjudged in contempt of court either civilly or criminally.

ASSENTED TO, WAIVING ALL RIGHTS OF APPEAL:

INTEGRATED CREDIT SOLUTIONS, INC.    FLAGSHIP CAPITAL SERVICES CORPORATION

By: _____    By: _____
       Signature                                      Signature

_Charles Farrell_                _Charles Farrell_
       Printed Name                               Printed Name

Title: _Chairman of Board of Directors_    Title: _Chairman of Board of Directors_